[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 417 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 418 
Neither the respondent's legacy, nor either of the others, except that of the residue, were charged upon the real estate of the deceased. The question which we are to determine is, therefore, whether a married woman, having her property settled to her separate use in the manner which was adopted in this case, could, at the time this will was made, dispose of her personal estate by will notwithstanding her coverture.
Before the enactment of the Revised Statutes, it was well settled that a married woman might make a will of her separate personal property, which would be valid in equity; and it was not necessary that the marriage articles, or the conveyance by or through which she acquired the property, or by which it was settled to her own use, should express that she should have power to dispose of it by will. When it was established that it was her sole property which she had a right to hold free from the control or intermeddling of her husband, she was regarded by the court of chancery as a feme sole in respect to such property, and could dispose of it by will, or by a conveyance inter vivos, in the same manner which any other proprietor of such property could do. A condition might be annexed to her title, forbidding her to aliene or to use any particular form of alienation; but in the absence of any such restriction, she was free to adopt any method of disposing of it, which the law gave to other absolute owners, except that she was disabled from making a valid covenant or agreement as to title. (Peacock v. Monk, 2 Ves., Sen., 190, 191, per Lord Hardwicke; Fettiplace v. *Page 419 Gorges, 1 Ves., Jun., 46; Wagstaff v. Smith, 9 id.,
520; 1 Sugd. on Pow., 210, 211; Jacques v. Meth. E. Church,
17 John., 548.) When a married woman bequeathed her separate personal property, the will did not take effect as an appointment under the statute of uses, or as the execution of a power, but was the exercise of the jus disponendi which belonged to her as owner; and it did not differ from the will of a person not under disability, except in the circumstance that the title which it created could only be asserted in a court of equity. Separate personal property in the wife was unknown to the common law, which considered the husband to be the owner of all the goods of the wife; and hence the law respecting settlements to her sole and separate use, and as to titles arising out of that doctrine, was available only in the court of chancery. As all the personal estate in possession of a woman vested absolutely in her husband at the moment of marriage, and all which she acquired during coverture immediately became his, the only subject upon which a will of personal property, executed by her, could operate, would be such as had been conveyed or settled to her separate use, and perhaps her contingent interest in her choses in action not reduced to possession, and her chattels real.
There was no statutory provision prior to the Revised Statutes respecting wills of personalty by married women. The legislature had re-enacted the material provisions of the English statute of wills (34 and 35 Henry VIII., ch. 5), and incorporated into the act the section of the English statute of frauds which related to the attestation of wills. By our act it was declared (following the English act), that no last will and testament made by a married woman of her lands should be valid in law; and that every person might, by will in writing, give or bequeath his personal estate in the same manner as if that act had not been passed. (1 R.L., 365, 367, §§ 5, 16.) *Page 420 
The foregoing remarks will prepare us for the consideration of the provisions of the Revised Statutes. As to wills of personalty it is enacted, "that every male person of the age of eighteen years or upwards, and every female, not being a married woman,
of the age of sixteen years or upwards, of sound mind and memory,and no others, may give and bequeath his or her personal estate by will in writing." (2 R.S., 60, § 21.) This is a declaration in terms that a married woman cannot give or bequeath her personal estate by will. The prohibition is positive and unqualified. Mrs. Wadhams was a married woman, having personal estate, and she undertook to bequeath it by this will. The will must be declared void unless a distinction can be established between a will maintainable only in a court of equity and one which would be recognized by the courts of law, and unless the statute prohibition can be limited to wills of the latter description. But the statute makes no such distinction. Moreover there is none in the nature of the thing. The only will which she could have made of personalty, if there had been no prohibition, would have been of her separate property, which she held under the protection of the courts of equity in derogation of the rules of the common law, for the plain reason that she could have no other. The argument to sustain the will assumes that a femecovert might possess personal estate not given or settled to her separate use, nor protected from the effects of the marriage, by articles, and which the courts would recognize independently of the equitable doctrines to which reference has been made. But there is no foundation for this assumption. If the provision, depriving married women of the privilege of bequeathing their personal property, does not extend to such property when settled to their separate use, it has no effect upon their testamentary capacity; and they may, since the statute, make any will which they could have made before, or which they could make if the statute, instead of disqualifying them, had, in *Page 421 
affirmative language, endowed them with full testamentary capacity. Such a construction would be too unreasonable to be maintained for a moment.
An argument in favor of this will has been deduced from the course of decisions in respect to testamentary dispositions of real estate made by married women, notwithstanding the prohibition contained in the English statute of wills, and which we have seen was re-enacted in this state. It is familiar law, that, notwithstanding this prohibition, a married woman was competent to appoint the uses of land where a power for that purpose had been reserved by or given to her by some conveyance competent to raise and to direct the execution of such use, or where land had been conveyed in trust for her benefit with a like power of appointment, and this she might do by will where the power authorized it. Wills operating by way of the appointment of a use were common before the statute had authorized a devise of lands. The use was considered as a thing distinct from the land, and might be transferred by methods which would be entirely insufficient to convey the land itself. The statute of uses, passed a few years prior to the statute of wills, was designed to put an end to this distinction by conferring upon the possessor of the use the legal seizin and ownership of the land. The manner in which the intention of the legislature was defeated by the courts forms one of the most curious chapters of the law of real estate, but it is sufficient here to mention a single feature of this system, the one which declared that future or contingent uses might be limited upon a conveyance in fee, which would remain unexecuted until they were designated and pointed out by the party to whom the power to do so was given. When the power was executed, the person in whose favor the appointment was made became invested with the use, and instantly gained the legal estate by force of the statute. (3 Reeves' Hist. Eng. Law, 365, 366; 4 id., 247, 253, 360; 1 Sugden on Powers, 12, 184.) *Page 422 
Now, by the common law, a married woman could not dispose of her legal estate in lands without a fine or recovery, and by the statute of wills she was expressly prohibited from devising her lands; but as the instrument or attorney of another she could, both before and since the statute, convey an estate in the same manner as her principal, because the conveyance was regarded as the deed of the principal and not of the attorney. (1 Sugden onPowers, 184; Thomlinson v. Dighton, 1 P. Williams, 149.) It follows that a married woman cannot in England, and could not in this country until the passage of the act respecting married women in the year 1849, make a will of her real estate, except by virtue of a power or by way of appointing a use; but where she is clothed with such a power, her coverture forms no impediment to the transaction. (Peacock v. Monck, supra; Bradish v.Gibbs, 3 J.C.R., 523.) It may be proper to mention, to prevent misapprehension, though the doctrine has no particular bearing upon this case, that a formal conveyance to uses, or to trustees upon trusts to be executed by virtue of a power, is unnecessary; and that marriage articles, by which the husband agrees that his intended wife may dispose of her real estate, will be enforced in the same manner as though there had been a formal conveyance. Lord Hardwicke, in Peacock v. Monck,
expressed a doubt whether a simple agreement between husband and wife would be sufficient; but the cases since that time have definitely settled the question, that a court of chancery, acting upon the consciences of the parties and considering that done which they had agreed to do, will sustain an appointment under the provisions of an antenuptial contract, simply executory in its terms. (Wright v. Cadogan, 6 Brown's P.C., 156;Rippon v. Dawding, Ambler, 565; Bradish v. Gibbs, supra.)
It is not probable that the courts at the present day would feel authorized to deal with a modern statute in the manner practiced by the English tribunals in respect to *Page 423 
the statute of uses and the statute of wills, passed in the reign of Henry VIII. Mr. Sugden calls the doctrine, by which it was determined that a use engrafted upon a use was not executed by the statutes, and which gave rise to the law of trusts, an "unaccountable construction;" and, speaking of the particular subject under consideration, he intimates that a married woman ought not to have been permitted to execute a power giving a complete dominion over her estate, contrary to the rule of law. (Vol. 1, pp. 10, 184.) But besides, there is nothing in the law of personal property, upon which to base such a distinction as that which separated the land from a use or a trust engrafted upon it, and enabled a married woman to devise an effectual title, though she was forbidden by the legislature to make a will of the land itself. The modern doctrine of powers and appointments to uses grew out of the statute of uses, which had no relation to personal estate; and the subtle refinements and artificial distinctions, with which the law of real estate abounded, were never applied to personal property, which has always been governed by rules comparatively plain and simple.
These considerations have led me to the conclusion that Mrs. Wadhams was prohibited from making the will in question, by the provision of the Revised Statutes to which I have referred. This conclusion is confirmed by the circumstance that when the law respecting powers came under the consideration of the legislature, and was greatly modified, the right of a married woman to execute a power respecting lands, notwithstanding her coverture, was carefully preserved, while no similar provision was made respecting personal property; by which it seems to follow, that the prohibition so often referred to is left unqualified. (1 R S., 732, 735, §§ 80, 110.)
I have not been unmindful of the dicta of Chancellor Walworth, in Strong v. Wilkin (1 Barb. Ch. R., 9), andMochring v. Mitchell, (id., 264). The present question did *Page 424 
not arise in either of these cases, and what was said by the learned chancellor, though entitled to that respectful consideration which his opinions always deserve, was purelyobiter. The precise question has been considered by Mr. Bradford, in the surrogate's court of New-York, and he came to a different conclusion from that above stated. But the will in that case, which presented this question, had been revoked by another made subsequent to the act of 1849, so that the point was not material to the final decision. (1 Bradf. Rep., 120.)
I have thus far assumed that the marriage articles between Mr. and Mrs. Wadhams contained a power authorizing the latter to dispose of her estate by will. Such an authority is not given in terms, and I do not find anything in the instrument which looks, or can be understood to allude, to a testamentary disposition. It is very full, to the effect that she might enjoy, control and dispose of her property during coverture, as an unmarried woman; and this, under the law as it existed before the Revised Statutes, would have enabled her to make this will. It is sufficiently explicit to warrant a court of equity in treating her as a feme sole in respect to her whole estate; and the only objection to her will, as to the personalty, is the positive denial of that right by the Revised Statutes. But if we could say that the inhibition were only sub modo, and that she could still make a will under a power to that effect in the article, it would still be necessary to show that that instrument contemplated a disposition of that kind. The idea of a will is not embraced within the power to enjoy, manage, control and dispose of the property during coverture. It is the office of a testamentary disposition to direct the course of the succession after the death of the possessor — in this case, after the coverture should be at an end. There is nothing to show that the husband was willing to confer that faculty upon his intended wife, if he had the power to do so. *Page 425 
The statute of 1848, which was the commencement of a new system respecting this branch of the domestic relations, does not reach the case; it does not give the power to bequeath or devise. The succeeding legislature effected that object (Laws of 1849, p. 528); but this will had taken whatever effect it has, before that act was passed.
The judgment of the supreme court should be reversed, and the decree of the surrogate affirmed.
All the judges concurred in this judgment, on the ground last discussed in the foregoing opinion. The court did not pass upon the question, whether the instrument propounded as a will would have been valid, if the antenuptial agreement had contained a provision authorizing Mrs. Wadhams to dispose of her property by will.
Judgment reversed.