KINGSLEY, adm'r &c. vs. SMITH.

KINGSLEY
v.
SMITH.

Where a wife died intestate, leaving children by a surviving husband, and also children by a former husband: *Held*, that the surviving husband was entitled to an estate as tenant by the curtesy, in so much of her real estate as would by law descend to her children of the second marriage.

Tenancy by the curtesy, in cases where the wife dies intestate, is not abolished by chapter 95, R. S., 1858.

Section 30, chapter 89, R. S., 1858, discussed and explained.

APPEAL from the Circuit Court for *Dane* County.

Roxana Smith died intestate on the 23d of July, 1859, leaving her husband *Abraham Smith* (the defendant in this action), and two children of their marriage, surviving her, and also two surviving children of a former marriage with one Simons. At the time of her marriage to *Abraham Smith* (which was in January, 1850), said Roxana owned forty acres of land in Dane county, which were occupied and cultivated or leased to third persons by said *Abraham* until her death. After her death, the defendant received from his lessee of said land, as rent, one half of the crop grown thereon in 1859, of the value of $126 40. On an application of the plaintiff, as administrator of said Roxana, the county judge of Dane county cited the defendant to appear and answer whether he had in his possession any property belonging to the estate of said Roxana; and after examination had, made an order requiring him to pay over to said administrator said sum of $126 40. This decision was affirmed by the circuit court on appeal.

*Welch & Lamb*, for appellant:

The proviso attached to section 30, chapter 89, R. S., is, "If the wife at her death shall leave issue by a former husband, to whom the estate might descend, such issue shall take the *same*," &c. Take what? The obvious answer is, the estate that descends to them; if all the estate may not descend to them, then they take that portion, and that portion only, which descends to them, and take it discharged from the right of the surviving husband to hold the same by curtesy. 2. The estate by the curtesy had its origin in the fact that the surviving husband might be left with chil-

dren, to be reared by him. Where there are no surviving children of the second marriage, and children of the first marriage are living at the mother's death, the reason of the common law rule ceases and the operation of the statute is just. But when there are children of both marriages alive at the mother's death, the reason of the common law remains. Such a construction as gives the children by the first marriage, in such a case, the portion to which they are entitled, discharged of the husband's curtesy, satisfies the provisions of the statute, and any further abrogation of the common law would be unjust.

*E. A. Spencer*, for respondent, contended that the birth and survivorship of issue of the second marriage did not affect the rights of the appellant to the estate claimed by him, which was cut off by the proviso to section 30, chap. 89, R. S. 2. Chapter 95, R. S., is in direct conflict with so much of said section 30 as gives an estate by the curtesy in any case, and, being the later act, repeals it. According to the rule established by the statute of this state, the interest of the husband attaches as soon as the parties are married, provided no child of the wife by a former husband be living to whom the estate might descend. According to the provisions of chapter 95, sections 1, 2 and 3, a married woman may receive, hold and dispose of property, real or personal, by deed or otherwise, absolutely, without the consent and entirely independent of her husband. If then both of the statutes referred to are in force, we have an absolute right in the husband, by operation of law, to an estate by the curtesy in the lands of his wife, subject to the proviso before stated; and we also have an absolute right in the wife to dispose of her land as she shall think fit. Rights such as these cannot exist at the same time. See on this point *Hurd vs. Cass*, 9 Barb., 368; *Clark vs. Clark*, 24 id., 581—both overruled in *Billings vs. Baker*, 28 id.; 354. See also *Hathon vs. Lyon*, 2 Mich., 93.

*By the Court*, COLE, J. At common law four conditions must exist to create the estate of tenant by the curtesy, namely, marriage, actual seisin of the wife, issue born alive, December 11.

and death of the wife (4 Kent, 28). It will be seen by the following provision of our statute, which makes an innovation upon the rule of the common law upon this subject, that only three conditions are requisite in this state to create the estate of tenant by the curtesy, viz., marriage, actual seisin in right of the wife, and her death. This is the provision: "When any man and his wife shall be seized in her right of any estate of inheritance in lands, the husband shall, on the death of his wife, hold the lands for his life, as tenant thereof by the curtesy : provided, that if the wife, at her death, shall leave issue by any former husband, to whom the estate might descend, such issue shall take the same discharged from the right of the surviving husband to hold the same as tenant by the curtesy." Section 30, chapter 89, R. S., 1858. This provision is more favorable to the husband than the common law rule, which required inheritable issue to complete his title to curtesy, except in those cases which come within the proviso, when the estate descends to the issue of the wife by a former husband, discharged of this right. The wife of the plaintiff in error died leaving two children, issue of her marriage with him, and two children by a former husband ; and the question arises, what becomes of her estate, and what are the rights of the surviving husband, if any, therein ? On the one hand it is claimed and insisted that by force of our statute, the wife's estate descends to her children discharged entirely from any rights of the husband therein; while on the other hand it is insisted that at least the husband is entitled to curtesy in one half of the estate. This latter view of the statute, it appears to us, is correct and must be adopted. In support of the former construction it is insisted that as the statute does not make the circumstance that inheritable issue is born during coverture essential to the creation of the estate of tenant by the curtesy, therefore it is immaterial whether the wife leaves children by the surviving husband or not, since if she leaves other children by a former marriage, then the proviso absolutely cuts off the rights of the husband by providing that such children shall take the estate discharged of his rights.

This reasoning, when applied to this statute, is more specious than solid. For certainly it is not immaterial, when we wish to determine what becomes of the wife's estate on her death, to inquire who takes that estate under our law. Aside from all claims of the husband, it must be admitted that in the present case her estate would go in equal portions to her surviving children by both marriages. Upon this point there is no room for doubt or controversy. See chapter 92, R. S. The effect of the provision above cited, then, is not to change the rule of the descent of real property owned by a married woman at the time of her death, and give it to any issue by a former husband to the exclusion of children of the surviving one. Only one half of Mrs. Smith's estate will go to her children by Simons; the other half will descend to her children by the plaintiff in error. But if we are to give the language of the statute the construction contended for by the counsel for the defendant in error, then we must say that the children by Simons take the entire estate of Mrs. Smith. For the proviso is, "If the wife at her death shall leave issue by any former husband, *to whom the estate might descend*, such issue shall take the same discharged from the right of the surviving husband to hold the same as tenant by the curtesy." We have already seen that the children of Mrs. Smith by her former husband could not take her entire estate. The estate could not descend to them to the exclusion of the other children. And still it is the estate which does thus descend to the issue of a former husband, which the statute declares shall be discharged from the rights of the surviving husband.

The section is susceptible of a clear and rational construction—one not in conflict with the other provisions of the statute. The first part of the section declares what conditions are requisite to create the estate of tenant by the curtesy. It provides that that estate may exist under the circumstances therein mentioned, which are more liberal and favorable to the husband than the rule at common law. It then went on to provide that in one case the estate by curtesy should still not exist, and that was when the wife left children by a former husband to whom her estate might descend, and

June Term, 1861.

KINGSLEY v. SMITH.

June Term,
1861.

Kingsley
v.
Smith.

then that such estate should go to them discharged of the surviving husband's rights. But in case the wife leaves children by the surviving husband as well as by any former one, then the full purpose and object of the statute are subserved by permitting that portion of the estate which the latter may take, to descend to them discharged of the surviving husband's rights, and preserving those rights in the remainder of her estate which might descend to his children. For it is not to be presumed that the legislature, after declaring that tenancy by the curtesy might exist under circumstances more favorable to the surviving husband than at common law, would then abridge or destroy his rights in the estate which should descend to his children, merely because there happened to be issue by a former marriage. Upon the death of the wife intestate, her estate descends to her heirs charged with the incumbrance of the husband's rights as tenant by the curtesy, except so far as it may descend to issue by a former marriage, and as to that portion of the estate, it becomes vested in such issue absolutely, discharged of his rights. This appears to be the plain and obvious meaning and intent of this provision of the statute.

But it was contended by the counsel for the defendant in error, that chapter 95, R. S., 1858, which provides that the real property of a married woman, and the rents and profits thereof, shall be her sole and separate property, necessarily cuts up by the roots and destroys all such estates as tenancy by the curtesy. To this position two answers are suggested by the counsel on the other side : 1st, that this chapter was not intended to deprive the husband of his estate as tenant by the curtesy in the wife's estate in case of his surviving her ; and 2d, that if such was the object and intent of that chapter, then it is invalid when applied to this case, because the plaintiff in error was married to Mrs. Smith before the passage of that law, and it was incompetent for the legislature to impair or destroy any of his rights in his wife's estate growing out of the marriage relation. As we are fully with the counsel upon his first point, it becomes unnecessary to determine whether the second is sound or not. There has been some discussion as to how far the legislature may go in

abridging or destroying such imperfect rights as the expectation or possibility of a husband taking as tenant by the curtesy in the wife's estate, and whether such legislation would impair the obligation of a contract, within the meaning of the constitution, and the question is not fully settled. I had supposed that the legislature might abridge, qualify or destroy the expectation of a husband of being tenant by the curtesy in his wife's estate, and that such legislation did not come within the constitutional prohibition, but whether I am right or not in that view need not be determined here. See *Stevenson vs. Townsend*, 22 N. Y., 517.

The primary object of chapter 95 undoubtedly was to secure to the wife the real estate which she might own at the time of marriage, or which might be conveyed to her during coverture, to her sole and separate use, beyond the control of her husband or his creditors. The statute authorizes her to take and hold real and personal property not conveyed to her by her husband, as a *feme sole*, to her sole and separate use, and to convey the same by deed or dispose of it by a valid will. But we do not think the legislature intended to destroy tenancy by the curtesy in her estate when she died intestate and he would be entitled to curtesy by section 30, chapter 89. This view is strengthened by the history of the legislation upon this subject. Our present provision in regard to tenancy by the curtesy was contained in the old statutes of 1849. After those statutes went into operation, the legislature passed the act of 1850 for the more effectual protection of the property of married women. The latter act has been incorporated in our new revision together with the section in respect to estates by curtesy. Now it might not be any very great anomaly in the legislation of this state, if two wholly inconsistent and irreconcilable provisions of law were enacted by the same legislature at the same session. Such blunders in legislation have occurred and probably will occur again. But still it is difficult to understand how such a striking and important provision as the one which declares when tenancy by the curtesy shall exist, should find its way into the present statutes, if chapter 95 intended to abrogate such estates entirely. We do not

think it fair to assume that the legislature enacted the former provision without consideration, and when there could not possibly be any such estates under the construction sought to be given chapter 95. Both provisions must, if possible, be reconciled, and this can only be done by saying that when the wife dies intestate, tenancy by the curtesy still exists in favor of her surviving husband. When the wife conveys or devises her real estate, this estate cannot exist. We are therefore forced to the conclusion that the legislature did not intend directly to abolish tenancy by the curtesy, and we do not think they have done so by implication. We are aware that there is some conflict of decisions in the courts of New York upon this subject (*Hurd vs. Cass*, 9 Barb. S. C. R., 366; *Clark vs. Clark*, 24 id., 581; *Billings vs. Baker et al.*, 28 id., 343); but we can give to our statutes no other rational or admissible construction.

It follows from these observations, that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this decision.