## PRICE vs. OSBORN and others.

HUSBAND AND WIFE; DEED. (1) *Land conveyed to wife by way of settlement, conveyed by her as if sole.* (2) *Husband cannot recover because consideration paid by him, or because of homestead.* (3) *Quære, as to the rights of a grantee who voluntarily permits his deed to be altered by erasing his name and inserting another.*

1. Where a husband, *by way of settlement upon his wife,* caused a deed of land to be executed to her by one M., the consideration for which was paid by the husband (there being no question of the rights of creditors): *Held,* that she *might convey the land* in the same manner and with like effect as if she were unmarried. R. S., ch. 86, sec. 2.
2. After such a conveyance by the wife, the husband could not maintain a suit in equity to establish an interest in the land, on the ground that the *consideration* therefor was paid by him to M., or that the premises, when deeded by the wife to her co-defendant, were the *homestead* of the family, and could not be conveyed by her alone.
3. If the proof were, that the deed from M. was executed and delivered to the husband; that he afterwards surrendered it to M. for the purpose of having a new deed made, running to the wife; and that M. merely erased the husband's name and inserted that of the wife as grantee, and then had the deed recorded; *quære,* how far the husband could claim and assert title under the deed after having voluntarily consented to its alteration or destruction, and what aid equity would afford to the husband on his application to set aside such conveyance.

APPEAL from the County Court of *Milwaukee* County.

*Harrison Price* brought this action against *Pamela Price,* his wife, *Amasa Osborn,* and *John Metcalf* and his wife, for the

purpose of setting aside a deed of certain property, made by *Metcalf* to *Pamela Price*, and a subsequent conveyance by her of the same property to *Osborn*, and to compel *Metcalf* and wife to execute a conveyance of the land to plaintiff.

Upon the trial, plaintiff testified that, in 1856, he purchased the premises in controversy of *John Metcalf*, paying $100 therefor, and *Metcalf* made a deed to him, which he afterwards returned to *Metcalf* and instructed him to make a deed to his wife, *Pamela Price;* that he told *Metcalf* to return the new deed to him when made, but he never did so ; that he (witness) went into possession at the time of purchase, and had remained in possession ever since ; that he built a brick house on the premises in 1856, and had spent about $1,000 in improvements.

*John Metcalf* deposed, in substance, that he sold the property to plaintiff, who paid for it, went on the property, built a house, and has lived there ever since. " One day *Mr. Price* wanted a new deed made out to *Mrs. Price,* and said he would pay the expenses. Of this I am positive. It was not long after his purchase. Think I took the deed to Mr. Small, who told me he could scratch out " Harrison " in the deed, and insert " Pamela," and save making a new deed. As I said before, my recollection is, that he made the alteration. I have no other recollection. I never could remember or recall what I did with the deed after taking it into his office." On cross examination, the deed being produced, witness testified that the alteration was made by Mr. Colby.

James M. Colby, for defendants, deposed, in substance, that he drew the deed in question from *Metcalf* and wife to *Pamela Price;* that he was at *Metcalf's* in the spring of 1856, and filled out the deed at *Metcalf's* request. " The deed was first drawn to *Harrison Price.* A few days afterwards *Mr. Metcalf* took the deed down to see what *Mr. Price* said about it. He returned during the day, and requested me to erase ' Harrison ' and insert ' Pamela.' He said it would be legal, because the deed

had not been executed. I erased 'Harrison,' and inserted 'Pamela.' The word 'Pamela' is in my handwriting."

*John Metcalf*, for defendant, testified, on cross examination: " Don't remember about giving the deed to *Price;* don't remember that he ever had the deed. He asked me to make one to his wife. That is what I intended to say in my former testimony. I was sure then that I had a deed already made out, but I don't know; perhaps my wife had not signed it. I am more in doubt than formerly. * * I am sure that my memory is not very good, and Colby is one of those men that never forget anything; he is as famous for recollecting as I am for forgetting."

D. W. Small, for defendants, testified as follows: " I took the acknowledgment of this deed from *Metcalf* and wife to *Pamela Price*. *Metcalf* came to my office and wanted me to take the acknowledgment of the deed to *Mrs. Price*. He signed it in my office, and I signed my name as a notary to the deed, and he left it. His wife was sick, and in the evening I took the deed to his house. She there signed it, and Mr. Colby and Miss Gridley witnessed it. When I first saw the deed, it was as it is now. *Pamela Price* was grantee. The deed is just as it was that day, only a little older and more worn. After the deed was acknowledged, it was taken to Waukesha by me, and put upon record, at *Mr. Price's*, the plaintiff's, request. He paid me for recording it. I have an entry made in my cash book of the money for recording it, paid me by *Harrison Price* about the second day of July, 1856. (Book produced.) Here is the entry made at the time: two dollars for recording two papers, this deed and another paper. After this deed was recorded, I gave it to *Price*." On cross examination, witness testified that the deed to *Osborn* was made at his office by his partner; that they had about $1,800 of *Osborn's* money in their hands, and were to buy him a house; that they bought the lot for $700 for *Mr. Osborn;* that on the next day they examined the records, found them all right, and paid the money; that

*Mrs. Price* was in possession of the property, and *Mr. Price* was living apart from his family at the hotel.

It was further shown that there had been much difficulty and ill will between *Price* and his wife, and it was admitted by both parties that they had been divorced since this suit was begun.

The defendant *Pamela Price* testified that her three brothers did considerable toward building the house; that she " did a considerable, and *Mr. Price* did some. I earned the lumber used inside of the house, and my brothers paid for the work. My brothers sent me drafts at different times, which I used in building the house. I teased *Mr. Price* to help me build, and got him to do all I could. * * One morning, *Mr. Metcalf* brought me the deed, and *Mr. Price* would not accept it because he wanted it made to me, and *Mr. Metcalf* took it back. *Price* said he would not accept it. I don't recollect seeing the deed after it was made out to me, until after it was recorded, when *Mr. Price* handed it to me, and told me to lay it up and take care of it." She further testified that she and her children were in possession of the property at the time of the sale to *Osborn*, and *Price* was living at a hotel. On cross examination, she said : " The forty dollars that bought the lumber inside of the house, I earned by sewing. I wrote my brother and got money, and I continually helped. None of it was my money before marriage. Once my brother sent me for the house $25, once $20, once $15, $10 several times, $5 several times, and so on. Some of it may have been to compensate me for boarding my mother."

The court found for the plaintiff, declaring the title vested in plaintiff in fee simple, by the deed as originally executed from *Metcalf* to *Price*, and that the deeds from *Metcalf* and wife to *Pamela Price*, and from the latter to *Osborn*, were void and conveyed no title to the premises. Judgment in accordance with the findings ; from which the defendants *Amasa Osborn* and *Pamela Price* appealed.

*George F. Westover*, for appellants, argued, *inter alia*, that the

deed from *Metcalf*, being finally executed to *Mrs. Price* as grantee, by consent of both parties, the title to the land became legally vested in her. *Gordon v. Haywood*, 2 N. H., 402. And there was no resulting trust to the husband. *Jencks v. Alexander*, 11 Paige, 619. Where a husband pays money for land and takes a deed to his wife, it is presumed to be by way of advancement. *Livingston v. Livingston*, 2 Johns. Ch., 537; *Guthrie v. Gardner*, 19 Wend., 414. And see *Curtis v. Fox*, 47 N. Y., 299. A conveyance to a married woman, by any person other than her husband, gives her the powers of a *feme sole* over the property, against the world, her husband and creditors included. R. S., ch. 95, sec. 3. Even a conveyance to her from her husband vests the title in her for all purposes, except as against her husband's creditors. *Putnam v. Bicknell*, 18 Wis., 333. And, having the title, she can convey as if she were unmarried. R. S., ch. 86, sec 2.

*Edwin Hurlbut*, for respondent, insisted that even if the court should conclude that the deed to *Mrs. Price* was a valid deed, still she had no just claim to the land, since the purchase money was paid by her husband. Hence she could not convey without his joining in the deed. Sec. 3, ch. 95, R. S., does not change the common law rule on this subject, and does not apply to this case. *Bennett v. Child*, 19 Wis., 362; *Pike v. Miles*, 23 id., 164.

COLE, J. In this case the court below found as facts established by the evidence, that the deed mentioned in the pleadings was executed by *Metcalf* and wife to the plaintiff, and, after being duly witnessed and acknowledged, was delivered to him as the grantee therein; that the plaintiff retained the deed for several weeks, and then surrendered it to his grantor for the purpose of having a new conveyance of the property executed to his wife, the defendant *Pamela Price*. And the court furthermore found that no new conveyance was in fact made, otherwise than by erasing the name "Harrison" from the deed

previously delivered, wherever that name occurred, and by inserting in lieu thereof the name "Pamela;" and that the conveyance, as thus altered, was placed upon record. This conveyance was executed, as the proof shows, in the spring of 1856, and was recorded in June following.

Now if this finding of the county court were warranted by the evidence, it would raise the interesting question as to how far the plaintiff might claim and assert title under that deed, after having voluntarily consented to its alteration or destruction, and what aid a court of equity would afford on his application to set aside a conveyance which he had thus directed to be made to his wife. From the view which we have taken of the case, it is not necessary to consider and decide this question. (But see *Parker v. Kane,* 4 Wis., 1, and *Wilke v. Wilke,* 28 id., 296; also *Hilmert v. Christian,* 29 id., 104.) We are clearly of the opinion that the conclusion reached by the county court is against the decided weight of testimony, and can not be adopted. We shall not go into any discussion of the evidence, but will content ourselves with the remark, that while there is a direct conflict in the statements of the witnesses upon the subject, yet we have no doubt that Colby and Judge Small state the facts in regard to the execution and delivery of the deed substantially as they occurred. The former drew the deed, and the latter took the acknowledgment, and they therefore had the best means of information about the matter concerning which they were called upon to testify. And according to their history of the transaction, a deed was first drawn in which the plaintiff was named as the grantee, but, before its execution, the grantee's name was changed from "Harrison Price" to "Pamela Price," at the request or by the direction of the plaintiff; and after the deed was so changed, it was executed, acknowledged and delivered, and was subsequently taken by Judge Small and placed upon record at the plaintiff's request, who paid for recording the same. And the statements of Judge Small as to the facts attending the record of the deed

are amply sustained, not only by his account books, but by the register and the written memorandum on the deed, which the register says is in his handwriting. We therefore have no hesitation in adopting the statements of Judge Small and Colby as being reliable, notwithstanding they are flatly contradicted by the plaintiff. We can attach but very little weight to the testimony of the witness *Metcalf*, when we consider the answer that he put in, which was sworn to, and his confused manner of testifying. We can readily believe him when he says that his memory is not good, and that he is not "famous for recollecting." It is quite evident that he is not. Accepting, therefore, as substantially correct the account given by Colby and Judge Small about the execution and delivery of the deed, there can be no doubt that the title of the premises became vested in *Mrs. Price*, who could convey the same in like manner and effect, under our statute, as if she were unmarried. This is the express language of sec. 2, ch. 86, R. S., which controls the transaction. It will be remembered that the rights of creditors are not involved, but the naked question is, whether the plaintiff is entitled to have the deed set aside which was made to his wife by his direction, and further to annul the conveyance which she executed to her co-defendant *Osborn*, in December, 1866. And we really know of no principle which will warrant a court of equity in granting him that relief upon the facts of this case. It is said that the entire consideration for the premises was paid by him to *Metcalf*, and that all the improvements have been made at his expense. Assuming that this is correct — although *Mrs. Price* denies that such was the fact — still we can not see that the plaintiff's position is essentially improved. It seems to us that there is no ground for claiming that these conveyances were made in fraud of his rights. He saw fit to have the title of the property conveyed to her, which conveyance was in the nature of a voluntary settlement. Such settlements are valid in a court of equity, when not made in fraud of the rights of creditors. *Putnam v.*

*Bicknell,* 18 Wis., 333; and *Pike v. Miles,* 23 id., 164. See also *Beard v. Dedolph,* 29 id., 136. It is also suggested that this property was used and occupied as the homestead of the family, and that therefore *Mrs. Price* could not convey it without the consent of the husband. The evidence shows that the real estate is the property of *Mrs. Price,* conveyed to her by *Metcalf* years ago, by the direction of the husband, when perhaps there was more sympathy and affection between him and his wife than now exists; and the statute confers upon her the power to dispose of this property with like effect as if she were unmarried. It seems to us there is really no room for serious discussion upon this point, in view of the explicit language of the provision above referred to.

It follows from these views that the judgment of the county court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.* — It is so ordered.