McKesson, Administrator, vs. Stanton and others.

McKesson, Administrator, vs. Stanton and others.

*September 25 — October 12, 1880.*

Married Woman: *Power to convey land in this state, without joinder of husband.*

1. *It seems* that a deed by a married woman residing in this state, of lands to which she had legal title, executed in 1846, without joinder of her husband therein, would have been void. But it was not necessary to determine that question in this case.

2. The married woman's act of 1850 gives a married woman the same power to "convey and devise real or personal property and any interest or estate therein," belonging to her, that she would have if she were unmarried; and, in the case of a woman who was married at the time of the passage of the act, this power is applicable to every interest in property which she then possessed, whether acquired before or after marriage.

[3. Whether, in the case of persons married before the act was passed, the legislature could divest the husband of the control of the use of the real estate which the wife then owned, or of his estate by the curtesy therein, not here considered.]

APPEAL from the Circuit Court for *Kenosha* County.

The case is thus stated by Mr. Justice Taylor:

" This is an action of ejectment brought by the appellant,

as administrator of Mercy Carson, deceased, to recover the possession of certain lands described in the complaint. All the parties to the action claim under the deceased, Mercy Carson. The evidence shows that in December, 1845, said Mercy Carson owned said real estate in fee; that she was then a married woman and a resident of this state; that on the 19th day of September, 1846, she conveyed the real estate in question to her daughter, Elizabeth Eggleston, for a valuable consideration, and took a life lease from her daughter of the same premises; that on the 14th day of March, 1857, said Mercy Carson, in consideration of $100, conveyed the same premises by a quitclaim deed to Sarah E. Stanton, and that Elizabeth Eggleston died on the 15th of June, 1849. Mercy Carson was a married woman, the wife of William Carson, at the time said real estate was conveyed to her in 1845, and so remained until the 28th of November, 1875, when her said husband died; and neither of the deeds made by the said Mercy Carson to her daughter, Elizabeth Eggleston, or to her grand-daughter, Sarah E. Stanton, was executed by her husband, William Carson."

The cause was tried by the court, and judgment rendered for the defendants, from which the plaintiff appealed.

For the appellant there was a brief by *J. V. & C. Quarles*, and oral argument by *J. V. Quarles*. They contended, among other things, that the deed of March 14, 1857, under which the defendant *Hall* claims, was void. Under the revision of 1849 the wife could only convey her lands by joining with her husband. Ch. 59, sec. 2. And power to execute the deed in question was not given to her by ch. 44, Laws of 1850. That chapter provides for three distinct classes of property. Section 1 refers to real estate at that time owned by any female then married. Section 2 relates to realty and personalty belonging to any woman thereafter to marry. Section 3 relates to property thereafter to be received from persons other than the husband. These classes are separated by the statute, and the very

conditions which distinguish them imply that they are subject to different rules. The lands in controversy (if under any circumstances they were the wife's separate property) come within the first section of the act. There is no provision for alienation except in the last section, and, by. all rules of construction, the power must be restricted to the object named in the section conferring it. In any event, the provision for alienation cannot apply to property coming, as in this case, from the husband. Section 1 of the act relieves real estate . then held by the wife from the control of the husband, and enables her to hold it to her separate use. Section 3 contains the same provision for holding, and confers the further power of alienation. *Expressio unius exclusio alterius.* The very presence of the power in section 3 rebuts any inference that it was impliedly conferred by section 1. *Pike v. Miles,* 23 Wis., 164, 167; *Kingsley v. Smith,* 14 id., 360. The power of alienation is not a necessary incident of ownership. Legal capacity is essential to such power. Infants and idiots may own, but cannot convey. If the law of 1850 gave the control and sole ownership of the lands in question to Mercy Carson, it still left them in her hands as in the hands of a person under disability. Her capacity to transfer remained as the common law fixed it. *Pettit v. Fretz,* 33 Pa. St., 118; 2 Bishop on M. W., §§ 66–7, 175–180, 196–8; *Swift v. Luce,* 27 Me., 285; *Moore v. Cornell,* 68 Pa. St., 320; *Parent v. Colerand,* 5 Leg. News, 157; *Cole v. Van Riper,* 44 Ill., 58. The statute is in derogation of the common law, and cannot be construed beyond its clear import. 1 Bishop on M. W., § 589, n. 1; 2 id., § 16. Subsequent legislation shows that the same view was taken by the law-makers as to the effect of the act of 1850, since in R. S. 1858, ch. 86, sec. 2, the statute was amended so as to expressly confer the power of alienation. The case of *Beard v. Dedolph,* 29 Wis., 136, involved personalty only, and the decision is binding only so far as it holds that as to personalty a married woman, by the act of 1850,

took full power of alienation. But there is a marked distinction between the attitude of a *feme covert* as to personalty and her attitude as to realty. The act of 1850, by giving to the wife personal property, gave to her a kind of property which she could not hold at common law. Such capacity, being first created by the statute, was fettered by no preëxisting rule. Personalty passed to her without restriction, and she took it with all the incidents of property, including the power to alienate, for the very reason that there then existed as to it no contravening rule of the unwritten law. Such a right would have passed as incident to ownership in regard to realty, had the statute at the same time created the capacity to take. But this she had before, and to this capacity the common law had annexed certain restrictions and disabilities. The act of 1850 removed the restrictions, but did not touch the disability. The unwritten law always enters into and becomes a part of the statute, and the act was limited by the common law as it then stood. No new rights were conferred except those expressly given, and the power to convey by separate deed was not so bestowed. 1 Bishop on M. W., §§ 67, 175.

For the respondent *Stanton* there was a brief by *S. B. Van Buskirk*, and for the respondents *Hall and wife* a separate brief by *S. U. Pinney*, of counsel; and the cause was argued orally by *Mr. Van Buskirk* and *Mr. Pinney:*

1. The conveyance to Mrs. Carson in 1845 vested in her the legal title to the premises. The deed was not directly from her husband so as to be for that reason void at law. *Price v. Osborn*, 34 Wis., 34. Even if conceded to be void at law, yet it was good in equity and vested the property in her as against all persons save the creditors of her husband. Being made upon a valuable consideration, equity would sustain the transaction although no trustee had been interposed to hold for the wife's use. *Putnam v. Bicknell*, 18 Wis., 333; *Bullard v. Briggs*, 7 Pick., 533; *Ward v. Crotty*, 4 Met. (Ky.), 59. She was therefore at least the full equitable owner of the land.

And the act of 1850, operating upon her equitable estate in like manner as did the statute of uses, 27 Hen. VIII, upon the equitable interests existing before its passage, turned such previous equitable estate into a legal one, with incidents and qualities as a legal estate in all respects like those it had possessed as an equitable one. 2 Bishop on M. W., §§ 363, 359; *Underhill v. Morgan*, 33 Conn., 105. Ch. 44, Laws of 1850, is a literal transcript of the New York act of April 7, 1848, as. amended by ch. 375, Laws of N. Y. of 1849. The object of this legislation was to emancipate the wife from the disabilities imposed on her by marriage in respect to her property. And in sec. 3 of ch. 44 we have express authority to sustain the deed of March 14, 1857. Sections 1 and 2 of the act covered the entire ground except as to capacity to acquire and convey. The object of section 3 was to confer these general rights. The construction which would confine the power to convey there given to property which she should acquire after marriage, is narrow and illiberal and does not accord with the spirit of the act. No such distinction was intended by the legislature, nor can any sound reason be given to support it. The capacity to convey extends to property acquired before the passage of the act, or while sole. *Yale v. Dederer*, 18 N. Y., 271; *Wadhams v. Home Missionary Society*, 12 id., 415; *White v. Wager*, 25 id., 331; *Sherman v. Elder*, 24 id., 384; *Beard v. Dedolph*, 29 Wis., 136; 2 Bishop on M. W., §§ 182, 186. The circumstance that this property was derived indirectly from the husband does not affect the power to convey, as the rights of creditors are not involved. *Price v. Osborn*, 34 Wis., 34. 2. If the land became the separate estate of Mercy Carson *in equity*, she had the same power of control and disposition over it in equity as a *feme sole* would have had at law. Her conveyance of it, without the consent or participation of her husband, passed to the grantee her entire beneficial interest, and made such grantee the equitable owner, who could not be ousted in this action by the holder of the

naked legal title.   2 Bishop on M. W., § 163; 1 id., §§ 852–3; *Taylor v. Meads*, 34 L. J., N. S., Ch., 203, 207; *Lechmere v. Brotheridge*, 32 Beav., 353; *Troutbeck v. Boughey*, L. R., 2 Eq., 534; *Allen v. Walker*, L. R., 5 Exch., 187; *Albany Fire Ins. Co. v. Bay*, 4 N. Y., 9.   The deed of March 14, 1857, was upon a valuable consideration, one hundred dollars.   *Reynolds v. Vilas*, 8 Wis., 471.   And it does not appear that she was indebted at the time.   This deed, therefore, is good as an equitable appointment for a valuable consideration in favor of the grantee.

TAYLOR, J.   The only questions discussed by the learned counsel upon this appeal are — *first*, whether the deed executed by Mercy Carson to Elizabeth Eggleston, in 1846, was void, her husband not having joined in the same; and *second*, whether the deed executed by her in 1857 to Sarah E. Stanton was void for the same reason.

The first point discussed by the learned counsel has never been directly adjudicated by this court; and it must be admitted, I think, that if she was possessed of legal title to said lands by virtue of the deed to her in 1845, then her deed, executed by her alone, by which she attempted to convey said estate to Mrs. Eggleston, was void, for the reason that her husband did not join in the same.   But, as we are all of the opinion that under the provisions of the "Act to provide for the protection of married women in the enjoyment of their own property" (chapter 44, Laws of 1850), the deed executed by her to Sarah E. Stanton in 1857 was a valid deed, and conveyed all the estate she then had therein, it is immaterial to the determination of this appeal whether the deed of 1846 was void or not.   In any case, the plaintiff has no claim to the estate as the administrator of said grantor, Mercy Carson.

Admitting that, previous to the passage of the law above quoted, in 1850, a married woman possessed of the legal title to real estate could not convey the same by deed unless her

husband joined with her in the conveyance, we think it very clear that the law of 1850 was intended to and does give a married woman the same power to convey real estate owned by her, that she would have if she were unmarried. The title of the act and all its provisions show that it was intended to enlarge the powers of the married woman over her own estate, to take from the husband all control over the same, and leave her with the same rights to and powers over her real and personal property as though she were not married. The learned counsel for the appellant insist that the power conferred upon the married woman in the third section of the act, "to convey and devise real and personal property, and any interest or estate therein, and the rents, issues and profits, in the same manner and with the like effect as if she were unmarried," should be limited to the property she receives after her marriage. We see no reason why the language should be so restricted. The language used does not restrict the power to the property received after her marriage, and there certainly is no reason for giving the power of disposition over property which the married woman may receive after her marriage, which does not apply with equal force to that which she had when she married. In every case where the marriage is contracted after the passage of the act of 1850, her right to the property she has at the time of her marriage is just as absolute and beyond the control of her husband as though it came to her afterwards.

It is said that when the marriage was contracted before the passage of the act of 1850, as is the case here, and to which the first section of the act solely applies, there is no presumption that the legislature intended to give her the power of disposition; because, it is argued, by the marriage the husband had acquired an interest in both the real and personal property of the wife, which the legislature could not divest. Upon this question we refer to *Kingsley v. Smith*, 14 Wis., 360; *Oatman v. Goodrich*, 15 Wis., 589–592; *Strœbe v. Fehl*, 22

Wis., 337; *Westcott v. Miller*, 42 Wis., 454; and section 2180, R. S. 1878. Without stopping to discuss the question whether the legislature could divest the husband of the control of the use of the real estate of his wife which she owned at the time of his marriage, or which may have come to her after the marriage and previous to the enactment of the law of 1850, we cannot see how that can affect the question of the construction of the power of disposition given in the third section. If the legislature had not the power to divest the husband of the right to the use of the wife's estate acquired before the passage of the act of 1850, under a previous marriage, then the first section of the act is simply void. If the first section of the act had been omitted, still the power to convey contained in the third section is sufficiently broad to authorize her to convey all the interest she had in such real estate, notwithstanding the husband's life estate therein. The language of the power is, " to convey and devise real and personal property, and any interest or estate therein," etc.

The wife clearly has an interest and estate in the real property she owned, although she was married previous to 1850; and the statute gives her the power to convey that interest and estate as though she were unmarried. Our statute is an exact transcript of the law of New York upon the same subject, as the same was amended in 1849. The law of New York is divided into three sections, the same as ours. As it passed in 1848, neither section conferred any express power upon the married woman to convey her property; and under the law as it stood in 1848, the court of appeals held that she had no power to convey her estate, notwithstanding the absolute control of the enjoyment which was given to her by the statute. A similar decision was made by the supreme court of Michigan, in construing the constitution of that state, which provided " that the real and personal estate of every female acquired before marriage, and all property to which she may afterwards become entitled by gift, grant, inheritance or de-

vise, shall be and remain the estate and property of such female, and shall not be liable for the debts, obligations, or engagements of her husband, and may be devised or bequeathed by her as if she were unmarried." That court held that this constitutional provision gave her no power to sell or convey the same during marriage. *Brown v. Fifield*, 4 Mich., 322–324; *Wadhams v. American H. M. S.*, 12 N. Y., 415–425.

After the amendment of the law in New York in 1849, so as to make it the same as our statute of 1850 in every respect, the court of appeals held " that a married woman might dispose of lands of which she held the legal title, without joining her husband in the conveyance, and without the solemnity of private examination and acknowledgment; " and in commenting upon the power of a married woman over her estate under that statute the court further said: " It would seem, for reasons quite similar, that she should have the right to charge an estate acquired and held under the statute referred to. The estate, it is true, is a legal one; but the disability of coverture, which, as we have seen, prevented her from disposing of or charging such estates in equity, no longer exists. That disability, as we have also seen, was overcome when she acted under a power of disposition conferred by the instrument conferring the estate. But that power is given in the broadest terms by the statute, and I see no reason why a power thus bestowed should not be equal in its results to one conferred by a private instrument." *Yale v. Dederer*, 18 N. Y., 265–271.

In *White v. Wager*, 25 N. Y., 333, the court says of the amended act of 1849: " No doubt there was an intention to confer upon the wife the legal capacity of a *feme sole* in respect to conveyances of her property." Although the first question raised by the learned counsel for the appellant has not been decided by this court, yet this court has repeatedly taken it for granted that the act of 1850 conferred upon a married woman the power to dispose of and convey her real

and personal estate as though she were unmarried, without qualification or restriction.

In *Beard v. Dedolph*, 29 Wis., 136, 141, this court says: " The statute has absolutely removed the disabilities of coverture *pro tanto*, as well with respect to her dealings with her husband as with every one else, by declaring that a married woman shall have and hold her sole and separate property as if she were a single female. It is clearly an incident of the ownership with which the wife is thus clothed by the statute, that she should have the power to make what disposition of her property she pleases; to sell or exchange it; . . . in short, do with her property whatever any owner can do with his or hers."

Although the language here used by the late learned chief justice would seem to deduce the power of disposition of her property by a married woman from the fact that the statute had given her the absolute ownership, independent of the fact that the same statute had expressly conferred upon her such right of disposition, and is therefore in apparent conflict with the opinions of the court of appeals in New York, and the supreme court of Michigan, above cited, we must, however, understand the language of the chief justice as used with reference to all the rights secured to her by the act of 1850, including the express power of disposition given therein. In order, therefore, to sustain the decision in that case, it is unnecessary to affirm the doctrine that the power of disposition is an incident of the ownership of the property as the separate estate of the wife, although that doctrine is sustained to the full extent, in equity, as to the wife's separate estate, by the authority of Lord Chancellor WESTBURY, in the case of *Taylor v. Meads*, 4 De Gex, J. & S., 597–607. As our statute expressly confers upon the wife the power to sell, devise and dispose of her separate property in the same manner as though she were unmarried, it is unnecessary to decide whether the right of disposition is a necessary incident of the ownership

McKesson, Administrator, vs. Stanton and others.

of a separate estate, or that this court would so hold if no express power were contained in the statute.

In *Price v. Osborn*, 34 Wis., 34–40, it is said: "There can be no doubt that the title vested in Mrs. Price, who could convey the same in like manner and effect under our statute as if she were unmarried. This is the express language of section 2, ch. 86, R. S. 1858." In this case Justice COLE, who delivered the opinion, refers to section 2, ch. 86, R. S., as giving the power to a married woman to convey her real estate. Yet it will be seen that section 3, ch. 95, R. S. 1858, which was the same as section 3 of the act of 1850, conferred the same power. It is, we think, quite apparent that the revisers, in 1858, inserted the provision in section 2, ch. 86, which is a chapter on the subject "of alienation by deed," etc. not for the purpose of conferring a power not before conferred upon married women, but for the purpose of making the chapter perfect in respect to its subject matter; and the first part of section 2 must be treated as simply declaratory of what the law was and had been since 1850.

In *Oatman v. Goodrich*, 15 Wis., 590, Chief Justice DIXON says, speaking of the right of disposition of the wife during coverture: "During her life the husband has no present interest, and she has that absolute power of disposition which pertains to a *feme sole*. She may mortgage or convey unconditionally without his signature or consent."

In *Sage v. McLaughlin*, 34 Wis., 550–556, Justice LYON says: "The statute conferred upon Mrs. Sage the power and right to sell and transfer these securities to her husband, or to any other person, with like effect as if she were unmarried;" and he refers to section 2 of the act of 1850. The reference is evidently intended to be to section 3 of said act, as no such power of disposition is expressly conferred by section 2.

We are satisfied that the courts of New York and this court have given the true construction to the act of 1850, and that the power to convey and dispose of her property by a married

woman, given by the third section of said act, is a general power, applicable to all property owned by her at the time of her marriage, or which she may thereafter acquire, and also to property owned by a married woman at the time the act of 1850 took effect. As to the last-named property, whether her conveyance, made without the assent of her husband, would convey the entire estate, or whether it would convey the estate subject to the right of the husband to claim his estate by the curtesy, does not change the construction to be given to the act. In either case, the right to convey such estate as she has is given by the statute.

*By the Court.*— The judgment of the circuit court is affirmed.