LENHARD and others vs. LENHARD and others.

*November 22 — December 11, 1883.*

*Deed set aside for incapacity of grantor.*

Upon the evidence in this case (stated in the opinion) the findings of the circuit court on a question of fact are set aside, and a deed is ordered to be canceled because of the utter unconsciousness and incapacity of the grantor at the time of its execution.

APPEAL from the Circuit Court for *Washington* County. The action was brought by *John Lenhard, Mary Spihs,* and *Frederick Lenhard, Jr.,* the heirs at law of Fredericka

Lenhard, deceased, against *Frederick Lenhard, Sr.* and *Dora Lenhard,* his wife, *William Ebert* and *Sophia Ebert,* his wife, *C. H. Schmidt, George Ebling,* and *Louis Bohne.* Fredericka Lenhard was, until the time of her death, the wife of *Frederick Lenhard, Sr.*

The amended complaint alleges that the said *C. H. Schmidt, William Ebert,* and *Sophia Ebert* connived and confederated with said *Frederick Lenhard, Sr.,* to cheat and defraud the plaintiffs out of the lands owned by Fredericka Lenhard in her own right, by causing a conveyance thereof from her to the said *William Ebert* to be executed by her on June 4, 1881, about fourteen hours before her death and while she was so feeble, delirious, unconscious, insane, and distracted as not to know what she did or be conscious of the act of executing such deed; that at the same time they caused to be executed a conveyance of said lands from said *William Ebert* and *Sophia Ebert,* his wife, to said *Frederick Lenhard, Sr.;* and that both of said deeds were wholly without consideration and fraudulent. It is further alleged that on December 25, 1881, *Frederick Lenhard, Sr.,* entered into a contract to sell said lands to the defendant *Ebling,* who paid $300 of the purchase money and still holds said contract of sale; that on February 4, 1882, with a farther intent to cheat and defraud the plaintiffs, *Frederick Lenhard, Sr.,* and *Dora Lenhard,* his wife (to whom he was married in the latter part of December, 1881), executed a deed of said lands to the defendant *Bohne* for the pretended consideration of one dollar, and that, on the same day and for the same pretended consideration, said *Bohne* executed a deed of the premises to the said *Dora Lenhard;* and that both of the last-mentioned deeds were fraudulent and without consideration, and were made after the commencement of this action by service of the summons and complaint on the defendant *Ebling.*

The prayer of the complaint is that *Frederick Lenhard,*

*Sr.*, be enjoined from transferring the contract for the sale of the lands; that he and his wife be enjoined from transferring or incumbering the land in any way; that *Ebling* be enjoined from paying any part of the purchase money on said contract to *Frederick Lenhard, Sr.;* that the plaintiffs be subrogated to the rights of the said *Frederick Lenhard, Sr.*, under said contract, and that he pay to them the $300 received thereon; that the said deeds from Fredericka Lenhard to *William Ebert*, from *Frederick Lenhard, Sr.* and wife to *Louis Bohne*, and from *Louis Bohne* to *Dora Lenhard*, be declared fraudulent and be set aside; and that the said *Dora* be adjudged to convey the premises to the plaintiffs.

The answer denies all allegations of fraud or of the incapacity of Fredericka Lenhard at the time of the execution of the deed to *Ebert.* The evidence will sufficiently appear from the opinion. The trial resulted in findings and a judgment in favor of the defendants, and the plaintiffs appealed.

For the appellants there was a brief by *Frisby & Weil*, and oral argument by *Mr. Frisby.*

For the respondents there was a brief by *E. P. Smith* and *Nath. Pereles & Sons*, and oral argument by *Mr. Smith.*

ORTON, J.   The facts present a case where, at a certain time during the marriage, *Frederick*, the husband, caused to be conveyed to Fredericka, his wife, the premises in question on a nominal consideration, and for love and affection.   In June, 1881, Fredericka died, but during her last sickness, and some fourteen hours before her death, she ostensibly executed the deed conveying back to her said husband the same lands through an intervening party, and since that time, in December following, *Frederick* intermarried with his wife *Dora*, one of the defendants, and has so disposed of said lands as to cause the title thereof to be vested in her, to the disinheritance of the children of the first marriage.   This is sub-

stantially the case, and the main question is fully presented by this statement in the brief of respondents' counsel, which is the competency and mental ability of Fredericka to execute the deed at the time to one *Ebert*, from whom the husband, *Frederick*, has since derived his title, and conveyed it to his subsequent wife, *Dora*. The husband and wife have been in the occupancy of said land since the deed of the husband was made by which she derived her title, and for many years before. It would make no difference with this issue that the husband made his deed in consideration of natural love and affection, or for a valuable consideration, for the bill goes upon the theory that the deed of Fredericka, by which the husband became again the owner of the fee, was made by her when she was incompetent to make it, and it is prayed that such title be restored to her heirs, on the ground that such deed for that reason was void. This is not a case in equity to have the deed from the husband, *Frederick*, to his wife set aside on the ground that it was merely voluntary and as a mere gift, which, on her death, ought to be restored to him. It is not, therefore, perceived how the circumstances of the deed of the husband for the benefit of his wife of this land, in respect to its being merely voluntary or a gift, can properly figure in the case. The case stands with the absolute title in fee simple in the wife, for all purposes whatever, when this pretended deed was made for the benefit of her husband, which by this action is sought to be set aside by reason of her incapacity to make it. The only issue, therefore, is, Was she of sound, disposing mind when she made that deed? *Price v. Osborn*, 34 Wis., 34. There may be charges of coercion and undue influence in the complaint, by the defendant *Frederick* and others, by which the execution of the deed was obtained, but they all seem to have reference to the time when the deed was made, at which time, it is alleged, the wife Fredericka "was so feeble, delirious, unconscious, insane, and distracted as not

to know what she did, or be conscious of the act of executing such deed." The charges of conspiracy are for the purpose of binding the intervening parties and purchasers by such decree as might be proper between the parties, the husband or father and the heirs.

The point that there is an improper joinder of parties, plaintiffs and defendants, seems not to be urged in the brief of the learned counsel for the respondent, but they would all seem to be proper in such a case. Kerr on Fraud & M., 479; Bigelow on Fraud, 378; *Armstrong v. Pratt*, 2 Wis., 299; *Newcomb v. Horton*, 18 Wis., 566; 1 Story's Eq. Jur., §§ 23, 71, 225. Some evidence relating to circumstances of coercion, antecedent to the time when the deed was made, was rejected by the court. This ruling would not be error in itself, as in a case at law, if the evidence was competent; and the ruling could have no other effect than to reverse the judgment, if the excluded evidence was necessary to be considered by this court in disposing of the case; and it is not necessary for such purpose.

The circuit court excluded from its consideration all statements or transactions by the husband with the wife depending upon his testimony, under the rule of the statute, and rendered its findings and judgment upon other evidence alone. Without passing upon this ruling, we will also dispose of the case upon such other evidence. The only question important to be considered is conceded by the learned counsel of the respondent to be, whether the wife was mentally competent and capacitated to make this deed when it was pretended to have been made by her. This is a question of fact, pure and simple. We regret the necessity of being compelled thereto, by the evidence, as we understand it, of differing with the learned judge before whom the cause was tried in our conclusion of this issue. The learned judge had superior means of judging of the credibility of the witnesses, but from the reported testimony we cannot resist the con-

clusion that his conclusion therefrom was radically wrong. We shall confine ourselves to the facts and circumstances of the execution of the deed, and the mental condition of Fredericka when she is said to have made it. In this view of the case we are clearly of the opinion that she was wholly without reason or consciousness, and mentally incompetent and incapacitated to make the deed. The evidence appears to be overwhelming that she was in an unconscious and delirious state of mind,—so near her death as to have lost even the faintest glimmer of either observation or memory of earthly affairs. For a husband, who had long before placed in her name the title of land, most probably obtained by the joint labors of both, with a probable preponderance in favor of the wife as to work, labor, and earnings, to so pertinaciously and unseemly, if not inhumanly, extort the mechanical signature of his dying wife to a deed of this same land for the purpose of diverting it from their joint heirs, and using it, probably, as an inducement to the next wife, so soon to be his, to take him for better or for worse, and probably for *worse*, in consideration of the land, is at least a charge which requires the severest scrutiny. The heirs of the deceased wife and mother now seek to set aside this deed so obtained from their mother.

It may be remarked that the evidence as to her expressed intention and wish to so deed for the benefit of her husband at a time when she was unquestionably competent, either a longer or shorter time before the deed was finally executed, as to the issue of her mental capacity when she actually executed the deed in the manner disclosed by the testimony, is quite immaterial. The defendants rely upon the deed, and not upon a previously expressed intention or promise to make it, and the plaintiffs seek to set it aside — *First*, because it was obtained by fraud and undue influence; and, *second*, because of the weak and unsound condition of her mind when her signature to it was obtained. These defenses are some-

what incompatible, because if the deed was obtained by fraud and undue influence it presupposes that she had mental capacity sufficient to be influenced and to be defrauded, and if her signature was obtained mechanically from her when in a demented and dying condition, and unconscious of the act, then the deed is voidable for quite another and somewhat contradictory reason. The learned judge, in his findings, negatived both of these grounds, and held the deed valid. As already suggested, we shall concern ourselves with the last ground alone. This view makes it unnecessary to notice the objections to the testimony offered to sustain or disprove the first ground of fraud and undue influence.

Fredericka Lenhard died in the morning of the 5th of June, 1881, and had been sick about fifteen days. Dr. Zinn was called on the 1st day of June to attend upon her. He found her suffering from typhoid malarial fever. She was confined to her bed. Her temperature was 104 to 105, pulse 110 to 120, tongue dry and incrusted with a brown coating, urine highly colored, and her spleen enlarged, and with *tympanites* of the abdomen, and her mind wandering and delirious, and she was drowsy and difficult to be aroused. He called the next day and found the symptoms and appearances about the same, and on the third day he found her in the same delirious condition, and the other symptoms aggravated, and then informed her husband, *Frederick,* that she was much worse and she could not recover. She was then in a stupor. Dr. Nauman testified, from the statements of Dr. Zinn, that she was in a comatose and delirious condition, which precluded the idea of mental soundness, and that there was a suspension of the mental faculties. Dr. Rogers, from the same statements of Dr. Zinn, testified that from his knowledge of such cases, when a patient is afflicted with such a disease soon to be followed by death, with delirium and in a comatose condition, he is mentally incapaci-

tated for transacting ordinary business. Dr. Marks, from the same statements of Dr. Zinn, testified that if the patient was in the condition described she must have been in an unconscious state, and would remain so until she died and incapable of transacting business; and the testimony of Dr. Fox is not materially different. Dr. Zinn was the only attending physician. Fredericka executed the deed the next day, on the 4th, about noon, and died in the morning of the 5th of June, about five o'clock. The scrivener, *Mr. Schmidt*, filled out the deeds in the house,— one for Fredericka to sign, deeding the land to *Ebert*, and one from *Ebert* and his wife to *Frederick*. It is difficult to say from the evidence which was executed first, but certainly very near the same time. *Mrs. Ebert* testified that she had seen Mrs. Lenhard every day of her sickness and lived in the same house, and that at the time her signature to the deed was obtained she did not know her or her own children, and was delirious. Her son *John* testified to the same effect, and that he remained with his mother until she died, and did not know that she had executed any deed, and that his father the next day denied that she had done so. The husband, *Frederick*, admits in his testimony that his wife was often unconscious in her sickness. The scrivener, *Schmidt*, testified that he read to her the deed in English, and asked her if she was satisfied, and she said " yaw," and then she said she could not write, and that he took the pen and she laid her hand on his hand and on the pen-holder and he made her mark in her name, which he had already written out in full. It is quite clear from the evidence that she could not write at any time, and understood English very imperfectly, if at all, and *Schmidt* testified that he did not know whether she understood anything.

This is the most striking case of utter incapacity to execute a deed that can be imagined. Any comments upon the evidence would only weaken it; it is too plain for ar-

gument or the necessity of citing authorities. The scrivener, *Schmidt*, should have never allowed himself to have directed the pen which made the mark in her signature, with the hand of this dying woman merely and mechanically placed upon his hand, probably by himself, as a pretext for her act. The husband, of course, was actuated by utter selfishness, and carried out his purpose with stolid and brutal insensibility. The officer, however, who prepared the deeds, and had that of the wife executed under such circumstances, when he confessed that he did not know that she understood anything that was being done, is deserving of special censure. The circumstances under which the deed was executed were known, or may be presumed to have been known, to all the parties to the conveyances, even to his subsequent wife, to whom he has since caused the land to be conveyed, and who was in attendance on Fredericka in her last sickness and while she was in a condition of unconsciousness. Nothing further need be said to demonstrate that this deed was executed, if at all, while the grantor, Mrs. Fredericka Lenhard, was in a condition of utter unconsciousness and incapacity, and that therefore her heirs, the plaintiffs, may well claim the land as belonging to her estate, and have the deed set aside and canceled which stands as a cloud upon their title.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to render judgment according to the prayer of the complaint, except as to the payment by the said *Frederick Lenhard, Sr.*, to the plaintiffs of the $300 received by him on any contract of sale, and except, further, as to any rights of the said *Frederick* as tenant by curtesy of said land.